

FILED

DEC 2 6 2006

J. T. NOBLIN, CLERK
BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

EVANSTON INSURANCE COMPANY          PLAINTIFF

V.          CIVIL ACTION NO. *3.06 cv 725- TSL-JCS*

ISAAC K. BYRD, JR.; PRECIOUS T. MARTIN;
BYRD, GIBBS & MARTIN, PLLC f/k/a BYRD &
ASSOCIATES, PLLC; ARTIS BOLDEN; and
MARILYN BOLDEN          DEFENDANTS

### COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, Evanston Insurance Company ("EIC"), through counsel,

pursuant to FRCP 57, and files its Complaint for Declaratory Judgment as follows:

### A. Parties

1.

EIC is an Illinois insurance company and an eligible surplus lines insurer in the State of

Mississippi.

2.

Defendant, Isaac K. Byrd, Jr. ("Byrd"), is an adult resident citizen of the State of

Mississippi and may be personally served with process by serving a copy of the Summons and

Complaint for Declaratory Judgment upon him at his business address of 427 East Fortification

Street, Jackson, Mississippi 39201.

3.

Defendant, Precious T. Martin ("Martin"), is an adult resident citizen of the State of

Mississippi and may be personally served with process by serving a copy of the Summons and

Complaint for Declaratory Judgment upon him at his business address of 427 East Fortification

Street, Jackson, Mississippi 39201.

4.

Defendant, Byrd, Gibbs & Martin, PLLC f/k/a Byrd & Associates, PLLC ("the law firm"), is a professional limited liability corporation organized and existing under the laws of the State of Mississippi and may be served with process by serving a copy of the Summons and Complaint upon one or more of its principals, officers, directors or agents at the firm's principal business address of 427 East Fortification Street, Jackson, Mississippi 39201.

5.

Defendants, Artis Bolden and Marilyn Bolden ("the Boldens"), husband and wife, are adult resident citizens of the State of Mississippi and may be personally served with process by serving a copy of the Summons and Complaint for Declaratory Judgment upon them at their residence address of 1370 Beasley Road, Jackson, Mississippi 39206.

## B. Jurisdiction and Venue

6.

Jurisdiction and venue over the parties, claims and causes of action at issue herein are proper in this Court because diversity of citizenship exists between the parties, the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and the legal malpractice suit underlying this declaratory judgment action is presently pending in said district and division.

## C. Factual Background

7.

On or about September 30, 2005, the Boldens brought suit against Byrd, Martin and their law firm, seeking damages on account of certain alleged acts of legal malpractice. A true and correct copy of said Complaint is attached hereto as Exhibit "A" and incorporated herein by

-2-

reference.

8.

On or about February 28, 2005, EIC issued a policy (No. LA-803433) of lawyers professional liability insurance which identified Byrd, Martin and their law firm as insureds. A true and correct copy of said policy is attached hereto as Exhibit "B" and incorporated herein by reference.

9.

The Bolden Complaint asserts that in September 1998, Byrd, Martin and their law firm entered into a contract to provide legal services in connection with certain personal injury and/or bad-faith insurance claims. More specifically, the Boldens alleged that Byrd, Martin and their law firm were negligent on account of the latters' collective failure to file the aforementioned claims in a timely manner under the applicable statute of limitations, and further, that the contract for legal services between the parties was breached.

10.

The subject EIC policy contains a "Prior Acts Exclusion" which states, in relevant part, that no coverage is afforded for any claims involving acts or injuries, as those terms are defined in the policy, which occurred prior to February 28, 2003. See, Endorsement No. 1 to Exhibit "B" attached hereto. Further, no coverage is afforded under the policy for any claims of which the insureds should have been reasonably aware prior to the effective date of the policy. See, Exhibit "B," p. 2, Para. 1(bb). Finally, the policy likewise excludes coverage for the Boldens' claims of bodily injuries and intentional infliction of emotional distress as they are not the result of an "Act" or "personal injury" as those terms are defined by the policy in the definitional section, and are likewise subject to an express exclusion. See, Exhibit "B," pp. 1, 5.

## D. Claims and Causes of Action

11.

EIC incorporates by reference the allegations of Paragraphs 1-10 herein above.

12.

As set forth herein above, the Boldens have asserted various claims and causes of action sounding in legal malpractice against Byrd, Martin and their law firm arising out of the breach of a contract for legal services dating to September 1998, including but not limited to, the failure to file certain claims for personal injury and bad-faith in a timely manner, before the running of the applicable statute of limitations under Mississippi law. As a result of such alleged legal malpractice, the Boldens contend that they have suffered certain bodily injuries and emotional distress.

13.

Because the applicable statute of limitations under Mississippi law for such claims is at most three (3) years, and given the terms and conditions of the "Prior Acts Exclusion" incorporated into the EIC policy via an endorsement, no coverage is afforded for the claims and causes of action asserted by the Boldens as the same would have occurred and/or accrued, and subsequently become time barred, well in advance of the February 28, 2003 deadline set forth in Endorsement No. 1.

14.

Further, on or about March 23, 2004, the federal district court dismissed the Boldens claims and causes of action against their automobile liability insurer. Accordingly, Byrd, Martin and their law firm were aware of a potential claim by the Boldens for the formers' failure to timely pursue such claims well in advance of the February 28, 2005 inception date of the subject

-4-

EIC policy.  Accordingly, no defense or indemnity is required.

15.

Finally, it is EIC's position that the subject policy does not provide coverage for the Boldens' alleged emotional distress as it did not result from an "Act" or "personal injury" as those terms are defined.  See, Exh. "B," pp. 1 & 2.  Likewise, no coverage is afforded for the physical injuries allegedly suffered by the Boldens.  See, Exh. "B," p. 5, Exclusion (e).  Therefore, no defense or indemnity is required under the subject EIC policy.

WHEREFORE, PREMISES CONSIDERED, EIC respectfully requests that this Court enter a Final Declaratory Judgment adjudicating that neither liability coverage nor a duty to defend exists under Policy No. LA-803433 in favor of Byrd, Martin or their law firm as it pertains to the claims and causes of action asserted against them by the Boldens.  EIC prays for such further or additional relief, whether legal or equitable, to which it may be entitled in the premises.

RESPECTFULLY SUBMITTED, this the _19th_ day of December, 2006.

EVANSTON INSURANCE COMPANY

BY:_____
Mark D. Morrison (MSB #9005)

OF COUNSEL:

ADCOCK & MORRISON, PLLC
Post Office Box 3308
Ridgeland, Mississippi 39158
Tel.:   (601) 898-9887
Fax.:  (601) 898-9860

-5-

IN THE CIRCUIT COURT OF MADISON COUNTY, MISSISSIPPI

ARTIS BOLDEN AND MARILYN BOLDEN                                    PLAINTIFFS

VERSUS                                          CIVIL ACTION NO. 2005-0353 R

PRECIOUS TYRONE MARTIN, SR., AND
ISAAC K. BYRD, JR. D/B/A BYRD & ASSOCIATES                          DEFENDANTS

FILED
THIS DAY
SEP 30 2005
LEE WESTBROOK
CIRCUIT CLERK

## COMPLAINT
## JURY TRIAL REQUESTED

COMES NOW the Plaintiffs, Artis Bolden and Marilyn Bolden, and files this their Complaint against the Defendants, Precious Tyrone Martin, Sr. and Isaac K. Byrd, Jr. d/b/a Byrd & Associates and for cause would show unto the Court the following facts, to-wit:

1.      Plaintiffs are husband and wife and are adult residents of the State of Mississippi, whose address is 1370 Beasley Road, Jackson, Mississippi 39206.

2.      Defendant, Precious Tyrone Martin, Sr., is an adult resident of the State of Mississippi, residing in Madison County at 113 Cherry Laurel Circle, Ridgeland, Mississippi 39157. Said defendant may be found for the service of process at the aforementioned residence located in Madison County, Mississippi.

3.      Defendant, Isaac K. Byrd, Jr. d/b/a Byrd & Associates is an adult resident of the State of Mississippi, residing at 14 East Hill Drive, Jackson, Mississippi 39216. Said defendant may be found for the service of process at the aforementioned residence located in Hinds County, Mississippi.

4.      In September of 1998, Defendants, entered into a contract to provide legal services

Page 1 of 3

EXHIBIT

*A*

for Plaintiffs in connection with Plaintiffs' personal injury claims.  At all times Defendants held

themselves out as an expert in the field of personal injury claims.  Defendants breached the contract

between the parties and/or negligently performed said contract and duties and failed to render proper

legal services to Plaintiffs.  Thus causing additional emotional and physical injuries and damages

to Plaintiffs in addition to the loss of recovery that Plaintiffs once had a right.

      5.     In the course of handling the personal injury matter for the Plaintiffs, Defendants

negligently and/or tortiously failed to file a Complaint within the applicable statute of limitations for

said Plaintiffs' claims.  Thus, barring the Plaintiffs from receiving their due compensation for their

injuries and damages.  In reliance upon Defendants' representations, Plaintiffs placed their fate in

Defendants' hands.

      6.     Plaintiffs aver that Defendants breached the contract of employment and were

negligent, tortious, and/or committed malpractice, in the following regard:

         (1)     By failing to file a Complaint within the applicable statute of limitations for

                  Plaintiffs' personal injury claims;

         (2)     By failing to file a Complaint within the applicable statute of limitations for

                  Plaintiffs' bad faith insurance claims; and

         (3)     By breaching the contract between the parties, wherein, Defendants were to

                  provide legal services for the Plaintiffs and/or failing to uphold the

                  representations that were made to the Plaintiffs.

      7.     As a direct and proximate result of said breach, and the negligence and/or malpractice

committed by the Defendants as mentioned in the above paragraph, the Plaintiffs have had to suffer

additional mental pain and suffering as a result of the prolonged process and fatal results handed to

Page 2 of 3

them. Defendants have caused these additional damages as a result of their negligent and/or reckless, willful, and/or wanton handling of Plaintiffs' claims.

8.      As a direct and proximate result of said breach, the negligence and/or malpractice on the part of defendant, defendant intentionally inflicted emotional distress on the plaintiffs by leading them to believe that their claim was being properly handled and that they would receive their day in court, when the Defendants knew that it would not.

9.      As a direct and proximate result of Defendants' negligence and/or malpractice and intentional infliction of emotional distress, Plaintiffs sustained actual damages in the amount of $20,000,000.00.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs hereby demand judgment of and from the Defendants in the amount of $20,000,000.00 in compensatory damages, plus pre-judgment and post-judgment interests and all cost accrued herein.

Respectfully Submitted,

ARTIS BOLDEN AND
MARILYN BOLDEN, Plaintiffs

BY:      _____
GARY D. THRASH
JOHN N. SATCHER, II

SINGLETARY & THRASH, PA
GARY D. THRASH / MSB# 8205
JOHN N. SATCHER, II / MSB# 100927
P.O. BOX 587
JACKSON, MS 39205-0587
PHONE: (601) 948-7410
FAX:      (601) 353-0126
EMAIL: STJXN587@SANDTLAWFIRM.COM

Page 3 of 3

# Shand Morahan & Company, Inc.

## Lawyers Professional Liability Insurance Policy

Underwriting Manager: Shand Morahan & Company, Inc.

## Insurer:

 **EVANSTON INSURANCE COMPANY**

[A stock insurance company, herein called the Company, which except in Illinois is a non-admitted insurer, writing pursuant to the surplus lines laws and not under the jurisdiction of the Insurance Commissioner.]



EXHIBIT

$\beta$

# POLICYHOLDER
# DISCLOSURE
# NOTICE OF TERRORISM
# INSURANCE COVERAGE

RE:  Policy Number: LA-803433
     Insured:  BYRD, GIBBS & MARTIN PLLC FORMERLY BYRD & ASSOCIATES PLLC
     Insurer:  EVANSTON INSURANCE COMPANY
     Risk ID. No.:  3043244

The Terrorism Risk Insurance Act of 2002 (the "Act"), effective November 26, 2002, requires EVANSTON INSURANCE COMPANY to notify you of your right to purchase insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act* ("Terrorism Coverage"): The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Act requires EVANSTON INSURANCE COMPANY to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this terrorism coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

When the above captioned policy was quoted, you were offered this Terrorism Coverage for a premium equal to a 3% surcharge of the total policy premium.  You were required to elect or decline purchase of this Terrorism Coverage by completing and submitting a Disclosure Notice of Terrorism Insurance Coverage and Election Form (form number ZZ-50001-01). If you elected to purchase this insurance coverage, the endorsement titled "Certified Acts of Terrorism Endorsement" is attached to your policy, and your policy premium includes a 3% surcharge.  If you elected not to purchase this insurance coverage, the endorsement titled "Certified Acts of Terrorism Exclusion" is attached to your policy, and your policy premium does not include this surcharge.

ZZ-50000-01



# EVANSTON INSURANCE COMPANY

**MARKEL®**

Policy No.    LA-803433
Prev. No.    LA-802937
Prod. No.    32534

## DECLARATIONS - LAWYERS PROFESSIONAL LIABILITY INSURANCE

Claims Made and Reported policy. This policy provides coverage for only those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE TERMS OF THIS POLICY. Please review the policy carefully.

THIS POLICY MAY CONTAIN PROVISIONS THAT REDUCE THE LIMITS OF LIABILITY STATED IN THE POLICY BY THE COSTS OF LEGAL DEFENSE AND PERMIT CLAIM EXPENSES TO BE APPLIED AGAINST THE DEDUCTIBLE.

1.    **NAMED INSURED:** BYRD, GIBBS & MARTIN PLLC FORMERLY BYRD & ASSOCIATES PLLC

2.    **ADDRESS OF NAMED INSURED:**
      427 E. FORTIFICATION STREET,
      JACKSON, MS 39202

3.    **POLICY PERIOD:**    From February 28, 2005 To February 28, 2006
      12:01 A.M. Standard Time at address of Named Insured stated above.

4.    **LIMITS OF LIABILITY:**

      Each Claim:                                    $ 1,000,000

      Policy Aggregate:                              $ 1,000,000

5.    **DEDUCTIBLE:**

      Each Claim:                                    $    75,000

6.    **PREMIUM:**                                   $   107,308.00

7.    If the Firm meets the eligibility requirements of THE COVERAGE 4., the PREMIUM FOR THE EXTENDED REPORTING PERIOD FOR A 12 MONTH PERIOD IS 150% of the applicable full annual premium hereunder.

8.    **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

      1. EIC 4436        Prior Acts Exclusion
      2. ZZ-44003-02     Certified Acts of Terrorism Exclusion
      3. EIC 4115-01     25% Minimum Earned Premium Endorsement

We hereby certify that the items below are a true, correct and complete copy of the Declarations attached to policy # LA 803433

SHAND, MORAHAN & COMPANY, INC.

*Michael A. Rozenberg*

Policy Form: EIC 1507-3 4/93
Dec: EIC1507-2 8/02
Date Printed: March 17, 2005

ALL CLAIMS TO BE REPORTED DIRECTLY TO

Shand Morahan & Company, Inc.
Ten Parkway North, Suite 100
Deerfield, Illinois 60015
Phone: (847) 572-6000, Fax: (847) 572-6338

*Michael A. Rozenberg*
Authorized Representative

 **EVANSTON INSURANCE COMPANY**

**MARKEL®**

## Endorsement

| Named Insured: | Policy No.: LA-803433 |
|---|---|
| BYRD, GIBBS & MARTIN PLLC | Endorsement No.: 1 |
| FORMERLY BYRD & ASSOCIATES PLLC | Effective Date: February 28, 2005 |

### PRIOR ACTS EXCLUSION
### (use with EIC 1507)

In consideration of the premium paid, it is hereby understood and agreed that Section THE EXCLUSIONS is amended by the addition of the following exclusion:

to any Claim based upon, arising out of, or in any way involving any Act or Personal Injury happening prior to February 28, 2003.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rozenberg*
Authorized Representative

EIC 4436 5/04

 **EVANSTON INSURANCE COMPANY**

MARKEL®

## Endorsement

| Named Insured: | Policy No.: | LA-803433 |
| BYRD, GIBBS & MARTIN PLLC | Endorsement No.: | 2 |
| FORMERLY BYRD & ASSOCIATES PLLC | Effective Date: | February 28, 2005 |

### CERTIFIED ACTS OF TERRORISM EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any claim or portion thereof based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance of Act of 2002 (Pub.L. 107-297) or any amendments thereto or any regulations promulgated thereunder. The federal Terrorism Risk Insurance of Act of 2002 sets forth the following criteria for a Certified Act of Terrorism:

1.    The act resulted in aggregate losses in excess of $5 million; and

2.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rosenberg*
Authorized Representative

ZZ-44003-02

 **EVANSTON INSURANCE COMPANY**

## Endorsement

| | |
|---|---|
| Named Insured: | Policy No.: LA-803433 |
| BYRD, GIBBS & MARTIN PLLC | Endorsement No.: 3 |
| FORMERLY BYRD & ASSOCIATES PLLC | Effective Date: February 28, 2005 |

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall apply and remain unchanged.

*Michael A. Rosenberg*
Authorized Representative

EIC 4115-01 2/03

# Lawyers Professional Liability Insurance Policy

## CONDITIONS PRECEDENT

As conditions precedent to the availability of any coverage under this policy, the payment of the premium must be made when due, and the application attached hereto and made a part hereof and all information in whatever form communicated by The Insured to the Company must be accurate. Subject to this policy's Declarations and all the terms of this insurance, the Company and The Insured agree as follows:

## DEFINITIONS

Wherever used in this policy the following words and phrases shall be defined as set forth below:

**Act:** The performance of or omission of a duty or obligation by The Insured while rendering legal advice or legal services for others.

**Claim:** A demand received by The Insured for Damages.

**Claim Expenses:** Subject to Company approval which shall not be unreasonably withheld, all reasonable fees, costs and expenses resulting directly from the investigation, adjustment, defense and appeal of a Claim. Provided, however, Claim Expenses do not include: salary charges of regular employees or officials of the Company; fees and expenses of supervisory counsel retained by the Company; salaries or compensation of any individual or entity identified within THE INSURED.

**Damages:** The monetary portion of any judgment, award or settlement and does not include:

    (a)    punitive or exemplary damages, any damages which are a multiple of compensatory damages, statutory treble damages, or fines, penalties or sanctions including, but not limited to, fines awarded pursuant to Rule 11 of the Federal Rules of Civil Procedure; or

    (b)    the restitution of consideration and expenses paid to The Insured for services or goods; or

    (c)    judgments or awards deemed uninsurable by law.

**Of Counsel:** Any lawyer or professional corporation or any lawyer who is an employee of such professional corporation who is specifically identified on the application as "Of Counsel," but solely with respect to acts on behalf of The Firm.

**The Firm:** The entity listed in the Declarations as "Named Insured".

**Personal Injury:** False arrest, false imprisonment, malicious prosecution, malicious abuse of process, wrongful detention, wrongful entry or eviction or other invasion of private occupancy, libel, slander or breach of privacy by The Insured all while rendering legal advice or legal services for others.

**Policy Period:** The period from the inception date of this policy to the policy expiration date as stated in the Declarations or the policy's earlier termination date, if any.

**Extended Reporting Period:** Whenever used in this policy means the period of coverage described in THE COVERAGE 4., which if purchased, incepts on the effective date of cancellation or non-renewal of this policy and expires upon the completion of the number of months indicated in the Declarations as "Policy Period" or at any earlier termination date effected pursuant to THE COVERAGE 4. (e).

**Predecessor Firm:** Any legal entity which was engaged in the practice of law to whose financial assets and liabilities the Firm is the majority successor in interest and which is designated in the application as a predecessor firm.

## COMPANY DESIGNEE

With respect to notices required to be given to the Company as provided for in INSURED DESIGNEE, THE COVERAGE 3. and 4., CLAIMS 1. and OTHER CONDITIONS 2. and 6., the Company has appointed Shand Morahan and Company, Inc., Ten Parkway North, Deerfield, Illinois 60015 to be the exclusive representative of the Company for the purpose of receiving such notices. All notices required by this Policy shall be made in writing to the Company Designee.

**INSURED DESIGNEE**

The attorney signing the application which is attached to the Policy shall be deemed the Insured Designee. The Insured Designee for this policy shall be the sole representative of The Insured.

The Firm or the Insured Designee may change the Insured Designee at any time. The Company must be advised in writing of any change in the Firm's Designee as soon as practicable after such change. In the event of the failure of the Firm to advise the Company, any notice or communication transmitted by the Company to the attorney signing the attached application shall be sufficient notice and shall be deemed notice to the Firm.

**THE INSURED**

**Insured,** wherever used in this policy means:

1.    The entity listed in the Declarations as "Named Insured", such entity to be known as the "Firm" but only for Claims arising out of legal advice or services provided on behalf of the Firm or any Predecessor Firm by any other Insured; and

2.    Any lawyer or professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

3.    Any lawyer who is an employee of a professional corporation that is a partner, officer, director, Of Counsel or employee of the Firm but only for Claims arising out of legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

4.    Any lawyer or professional corporation who is a former partner, officer, director, Of Counsel or employee of the Firm or any Predecessor Firm or of any professional corporation but only for Claims arising out of the legal advice or legal services rendered on behalf of the Firm or any Predecessor Firm; and

5.    Any other present or former employee of the Firm or any Predecessor Firm or of any professional corporation insured by this policy solely while acting on behalf of the Firm or any Predecessor Firm; and

6.    As respects the liability of The Insured as otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of The Insured as defined in Items 1. through 5. above in the event of death, incapacity or bankruptcy.

**THE COVERAGE**

1.    **Professional Liability Claims Made and Reported Coverage:**

The Company shall pay on behalf of The Insured, subject to the limits of liability, sums in excess of the deductible amount which The Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISION OF CLAIMS 1:

(a)    because of any Act; or

(b)    because of any Personal Injury,

PROVIDED ALWAYS THAT such Act or Personal Injury happens,

(aa)    during the Policy Period; or

(bb)    prior to the Policy Period provided that, on or prior to the effective date of this policy, no Insured was aware of any facts or circumstances from which a reasonable person would have anticipated a Claim;

PROVIDED FURTHER THAT no other policy which provides insurance for such liability or Claim resulting from such Act or Personal Injury is available to the Insured whether or not the available limits of liability of any such other insurance are sufficient to pay any such liability or claim or whether or not the deductible provisions and amount of any such other insurance are different from

this policy, unless such other insurance is written only as specific excess insurance over the limits of liability provided by this policy.

Subject to all other terms and conditions of this policy, when The Insured renders services as an administrator, conservator, executor, guardian, trustee, The Insured's Acts in such capacity shall be deemed for the purpose of this section to be the performance of legal services for others, provided that this coverage shall not apply to any loss sustained by The Insured as the beneficiary or distributee of any trust or estate.

**2.    Defense, Investigation and Settlement of Claims:**

The Company shall investigate and defend any Claim to which coverage under this policy applies pursuant to the following provisions:

(a)    Claim Expenses incurred in investigating and defending such Claim shall be included within the per claim policy limit of liability set forth in the Declarations and shall not be in addition thereto. Such Claim Expenses shall reduce the available limit of liability. THE COMPANY SHALL NOT BE OBLIGATED TO PAY ANY DAMAGES OR TO DEFEND OR TO CONTINUE TO DEFEND ANY CLAIM OR TO PAY CLAIM EXPENSES AFTER THE LIMIT OF THE COMPANY'S LIABILITY HAS BEEN TENDERED TO THE INSURED OR INTO THE COURT OR EXHAUSTED BY PAYMENT(S) OF DAMAGES AND/OR CLAIM EXPENSES.

(b)    Selection of defense counsel shall be made by the Company. Provided, however, that if the law of the state of the Firm's domicile (as designated on the Declarations page) allows the Insured to control the selection of counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which The Insured may designate counsel who shall act solely in the interest of The Insured, and The Insured agrees to direct such defense counsel to cooperate with the Company. Such cooperation shall include:

(1)    Providing on a regular basis, not less frequently than every six months, written reports on claimed Damages potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

(2)    Providing any other reasonable information requested and fully itemized billing on a periodic basis;

(3)    Cooperating with the Company and The Insured in resolving any discrepancies;

and the fees and costs incurred by such counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be included within the policy limit of liability and not in addition thereto. Such Claim Expenses shall reduce the available limit of liability.

(c)    The Insured shall cooperate with the Company in the defense, investigation and settlement of any Claim. The Insured will assist the Company in effecting any rights of indemnity, contribution or apportionment available to The Insured or the Company. Upon the Company's request, The Insured shall: (i) submit to examination and interview by a representative of the Company, under oath if required; (ii) attend hearings, depositions and trials; (iii) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (iv) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without charge to the Company.

(d)    The Insured shall not, with respect to any Claim covered under this policy, except at The Insured's personal cost, make any payment, admit liability, settle Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without prior written Company approval. Any costs and expenses incurred by The Insured prior to The Insured giving written notice of the Claim to the Company shall be borne by The Insured and will not constitute satisfaction of the deductible either in whole or in part.

(e)    The Company shall not settle any Claim without the consent of the Insured Designee. If, however, the Insured Designee shall refuse to consent to any settlement recommended by

the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company shall not be obligated to pay Claim Expenses incurred subsequent to such refusal. Furthermore, the Company's liability for such Claim shall not exceed the amount for which the Claim could have been so settled and Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the section LIMITS OF LIABILITY.

**3.    Discovery of Potential Claims:**

If, during the Policy Period, The Insured first becomes aware of any Act or Personal Injury for which a Claim might reasonably be expected to be made for which insurance is otherwise provided by this policy and gives written notice of such Act or Personal Injury which is received by the Company during the Policy Period, then any Claim subsequently made arising out of that Act or Personal Injury shall be considered to have been made on the date such written notice is received by the Company.

Such written notice shall include a description of:

1)    the specific Act or Personal Injury; and

2)    the injury or damage that has or may reasonably result from 1) above; and

3)    the circumstances by which The Insured first became aware of 1) and 2) above.

The Insured shall cooperate fully with the Company as set forth in THE COVERAGE 2., Defense, Investigation and Settlement of Claims, and any investigation conducted by the Company or its representatives shall be subject to the terms set forth in this policy as applicable to a Claim.

**4.    Extended Reporting Period:**

If the Company cancels or non-renews this policy, the Firm, for an additional premium charge, shall have the right to extend the period during which Claims must be first made and reported to apply to CLAIMS FIRST MADE AGAINST THE INSURED DURING THE PERIOD OF MONTHS INDICATED IN THE DECLARATIONS immediately following the effective date of such cancellation or non-renewal and REPORTED IN ACCORDANCE WITH CLAIMS 1., provided:

(a)    The Extended Reporting Period applies only to Acts or Personal Injuries committed prior to the effective date of cancellation or non-renewal of this policy which are otherwise covered by this policy; and

(b)    Cancellation or non-renewal does not result from the Firm's non-payment of premium and/or deductible or other non-compliance with the terms and conditions of the policy; and

(c)    Written notice of intent to exercise this option and the premium for the Extended Reporting Period is received by the Company from the Firm within ten (10) days of the effective date of cancellation or non-renewal. This premium shall be calculated at the percentage stated in the Declarations of the full annual premium of the policy; and

(d)    The full annual premium of this policy and any deductibles that are due have been paid by the Firm; and

(e)    The coverage afforded by this Extended Reporting Period shall terminate immediately when the Firm purchases a lawyers professional liability policy providing coverage in whole or in part for Acts or Personal Injuries committed prior to the end of the Policy Period. If coverage is so terminated, the Company shall refund pro rata any unearned premium charged for the Extended Reporting Period coverage; otherwise, the premium for the Extended Reporting Period shall be fully earned at the time of payment; and

(f)    The quotation of a different premium and/or deductible and/or limits of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this policy provision; and

(g)    The exercise of this Extended Reporting Period Option shall not in any way increase or be in addition to the limits of liability set forth in the Declarations.

## THE EXCLUSIONS

**The policy does not apply:**

(a)   to payment of Damages arising out of a judgment or award against an individual or entity identified in THE INSURED section of the policy who has been finally adjudicated to have committed an intentionally dishonest or fraudulent Act; however, notwithstanding the forgoing, the Company, subject to the Limits of Liability and other terms and conditions, will pay Claim Expenses for any such Claim, and shall not exclude coverage to the Firm or to any other Insured who is not so adjudged to have committed such Act as described above. This policy shall then pay only in excess of the deductible and in excess of the full extent of the capital and assets in the Firm of any such individual or entity who was so adjudged to have committed such Act as described above, and any other personal assets of such individual or entity recovered by the Firm shall inure, to the extent of the amount paid by this policy, to the benefit of the Company,

(b)   to any Claim made by an Insured or any individual or entity acting on behalf of any Insured.

(c)   to any Claim resulting from the rendering of legal advice or legal services for any individual or entity where such individual or entity either holds an ownership interest in or is considering acquiring an ownership interest in a business enterprise, pension, profit sharing, mutual or investment fund or trust;

    1)   which, at the time such advice or services were rendered, was more than 5% owned, controlled, managed or operated by any single individual or entity or any combination of individuals or entities within THE INSURED, alone or in conjunction with any spouse or any other immediate family member of any individual or entity identified within THE INSURED; or

    2)   for which any individual or entity identified within THE INSURED serves or served at the time such advice or services were rendered as an officer, director, partner, manager or employee or as a trustee in bankruptcy;

(d)   to any Claim arising out of The Insured's capacity as a public official or an employee of a governmental body, subdivision or agency unless The Insured is deemed to be such solely because The Insured has rendered legal advice or legal services to such governmental body and the remuneration for such legal advice or legal services inures to the benefit of the Firm;

(e)   to any Claim for bodily injury, sickness, disease or death of any person, or injury to or destruction of any tangible property or loss of use resulting therefrom;

(f)   to any Claim based on or arising out of the rendering of investment advice by any Insured in connection with the purchase or sale of any investment or property, including but not limited to securities, real property, syndications, limited partnerships, commodities or franchises; or to any claim based on or arising out of any Insured's services or capacity as a securities broker, dealer, financial planner, investment advisor, accountant, real estate broker or real estate agent;

(g)   to any Claim based upon or arising out of a contract for, or other right relating to, payment of or division of fees or fee apportionment;

(h)   to any Claim based on or arising out of discrimination of any kind by any Insured including but not limited to discrimination on the basis of race, national origin, creed, religion, age, sex, sexual orientation, health disability or marital status or to any claim arising out of alleged or actual wrongful termination.

With the exception of THE EXCLUSIONS (a) hereinabove, any fact pertaining to any one or more Insured(s) which determines the applicability of THE EXCLUSIONS hereinabove shall apply to each and every individual or entity identified within THE INSURED and the Company shall not be required to defend or indemnify any Claim arising out of alleged Acts or claim for Damages for which no coverage applies pursuant to THE EXCLUSIONS or any other terms of this Policy.

## TERRITORY

The Insurance afforded applies worldwide.

EIC 1507-3 4/93                              Page 5

**LIMITS OF LIABILITY**

1.  **Limit of Liability--Each Claim:**

    The liability of the Company for the combined total of Damages and Claim Expenses for each Claim FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1., shall not exceed the amount stated in the Declarations for "each Claim."

2.  **Limit of Liability--Policy Aggregate:**

    Subject to 1. Limit of Liability--Each Claim, the liability of the Company for the combined total of Damages and Claim Expenses shall not exceed the amount stated in the Declarations as "aggregate" as a result of all Claims FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH CLAIMS 1.

3.  **Deductible:**

    Except as set forth in the following paragraph, the deductible amount stated in the Declarations shall be applicable to the combined total of Damages and Claim Expenses for each Claim.

    Deductible payment or portions thereof shall be paid by the Firm within 30 days of demand.

4.  **Multiple Insureds, Claims and Claimants:**

    The inclusion of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the limits of liability and deductible. Two or more Claims arising out of a single Act or Personal Injury or a series of related Acts or Personal Injuries shall be treated as a single Claim. All such Claims whenever made shall be considered first made on the date on which the earliest Claim arising out of such Act or Personal Injury was first made and all such Claims are subject to the same limit of liability and deductible.

**CLAIMS**

1.  **Insured's Duties in the Event of Claim:**

    As a condition precedent to the availability of coverage under this policy The Insured's duties in the event of a Claim shall be as follows:

    (a)  If suit is brought or arbitration is instituted against The Insured, then The Insured shall immediately forward to the company, directed to Shand Morahan & Company, Inc., Ten Parkway North, Deerfield, Illinois 60015, every demand, notice, summons or other process received by The Insured or their representative; and

    (b)  If any Claim, other than a suit or arbitration proceeding, is made, then The Insured shall give as soon as practicable, written notice to the Company containing particulars sufficient to identify The Insured and claimant and full information with respect to the time, place and circumstances of the Claim; and

    (c)  In any event any Claim or suit made or arbitration instituted against The Insured during the Policy Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN SIXTY (60) DAYS AFTER THE EXPIRATION OF THE POLICY PERIOD; and

    (d)  In any event any Claim made or suit made or arbitration instituted against The Insured during the purchased Extended Reporting Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN TEN (10) DAYS AFTER THE EXPIRATION OF THE EXTENDED REPORTING PERIOD.

2.  **Subrogation and Indemnity:**

    (a)  In the event of payment for Damages or Claim Expenses under the policy, the Company shall be subrogated to all of The Insured's rights of recovery against any person or organization. Any recovery shall be used to pay: first, subrogation expenses; second, payments in excess of the deductible by The Insured; third, payments by an excess insurer; fourth, payments made by a primary insurer; and, last reimbursement of The Insured's deductible.

    (b)    If the Company makes any payment of Claim Expenses or Damages as a result of the final adjudication that an intentionally dishonest or fraudulent Act has been committed, then the Company shall have the right to indemnification of such payments from the individual or entity so adjudged, including any individual or entity identified in THE INSURED section of the policy.

**3.**    **False or Fraudulent Claims:**

If any individual or entity identified within THE INSURED commits fraud in presenting or maintaining any Claim, the Company at its sole option may void:

    (a)    this insurance with respect to such Claim; and/or

    (b)    this insurance as to such individual or entity from the date such Claim is presented or maintained; and/or

    (c)    this policy in its entirety; and/or

    (d)    this insurance from the date such Claim is presented or maintained.

**OTHER CONDITIONS**

**1.**    **Application:**  By acceptance of this policy, The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between The Insured and the Company, or any of its agents, relating to this insurance.

**2.**    **Firm Changes**: Any of the following changes in the Firm which occur during the Policy Period must be reported to the Company within sixty (60) days of such change:

    (a)    any change of 20% or more in the total number of lawyers in the Firm;

    (b)    any new involvement in any single practice specialty anticipated to produce 5% or more of the Firm's gross billable dollars;

A premium adjustment and/or revision of limits, deductible, and/or coverage may be required by the Company as a result of such change. A return of premium due to a mid-term reduction in staff is not available under the policy. Mid-term charges for increase in staff in excess of 20% may apply.

**3.**    **Changes:**  Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**4.**    **Non-Payment of Deductible:**  If, within thirty (30) days of demand by the Company, the Insured fails to pay any or all of the Deductible which the Insured has become obligated to pay, the Company has the right to institute binding arbitration against the Insured unless otherwise prohibited by the laws of the state governing the Policy. The arbitration fees and costs of both parties shall be borne by the Insured; however, should the Insured prevail in arbitration, the Company shall pay the fees and costs.

**5.**    **Assignment:**  Assignment of any interest under this policy shall not bind the Company unless its consent is endorsed hereon.

**6.**    **Integration of Document:**  All provisions of this policy are intended to be read together as one integrated document. No provision nor any part thereof is intended to be separable from the balance of the policy. The meaning of each provision of this policy is created by what is written in such provision and by what is written in the balance of the policy, and the Company issues this policy to The Insured in contemplation of the foregoing method of giving meaning to the policy.

If any provision of this policy is held to be void by a court of competent jurisdiction, then the balance of this policy shall still be interpreted in accordance with the preceding paragraph.

**7.**    **Cancellation or Non-Renewal:**  This policy may be cancelled by the Firm by the Firm's mailing of written notice to the Company stating when, thereafter, such cancellation shall be effective and by the Firm's surrender of the policy or a valid lost policy release to the Company.

This policy may be cancelled by the Company or by Shand Morahan & Company, Inc. by mailing to the Firm written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.

Provided, however, if the Firm does not pay the premium or deductible when due, the Company or Shand Morahan & Company, Inc., may cancel the policy giving the Firm at least ten (10) days written notice of cancellation. If no premium has been paid, cancellation for non-payment of premium shall be as of Policy inception. In the event that the policy is cancelled for non-payment of premium, the Company will not be liable for any Claims made against the Firm.

The Company, or Shand Morahan & Company, Inc., if it intends not to renew this policy, must give written notice to the Firm, mailed at least sixty (60) days prior to the expiration date of this policy.

The effective date of cancellation or non-renewal stated in the notice shall become the end of the Policy Period. Delivery of written notice by the Company or by Shand Morahan & Company, Inc., shall be equivalent to mailing. Should the Firm cancel the policy, the short rate proportion of the premium shall be charged. If the Company or Shand Morahan & Company, Inc., cancels the policy, the earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

8.  **Service of Suit:** Except with respect to any policy issued to a Firm domiciled in Illinois, or in any state in which the Company is licensed to transact business, it is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of The Firm will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this Clause constitutes nor should be understood to constitute a waiver of the Company's right to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court, as permitted by the laws of the United States or of any state in the United States. In any suit instituted against it upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Lord Bissell & Brook, whose address is 115 South LaSalle Street, Chicago, Illinois 60603, is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Firm they will enter a general appearance upon the Company's behalf in the event such suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of The Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**IN WITNESS WHEREOF**, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_____  
Secretary

_____  
President

EIC 1507-3 4/93                    Page 8

## NUCLEAR ENERGY LIABILITY
## EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies the provisions of this policy.

It is agreed that:

1.  **This policy does not apply:**

    A.  Under any Liability Coverage, to bodily injury or property damage

        (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C.  Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

        (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

        (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

        (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2.  **As used in this endorsement:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

    "nuclear facility" means

        (a) any nuclear reactor,

        (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.



**SHAND MORAHAN & COMPANY, INC.**
Ten Parkway North, Deerfield, IL 60015
(847) 572-6000 Fax (847) 572-6137
Underwriting Manager
A Markel Company

○ **DEERFIELD INSURANCE COMPANY**
○ **EVANSTON INSURANCE COMPANY**
○ **ESSEX INSURANCE COMPANY**
○ **MARKEL AMERICAN INSURANCE COMPANY**
○ **MARKEL INSURANCE COMPANY**

*BYRASSO*

## APPLICATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE
### (Claims Made and Reported Basis)

**RECEIVED**

**MAR 1 4 2005**

**SMCO**

**APPLICANT'S INSTRUCTIONS:**
1. Answer all questions. If more details are required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. PLEASE READ CAREFULLY THE STATEMENTS AT THE END OF THIS APPLICATION.
(PLEASE TYPE OR PRINT)

---

**1.    APPLICANT INFORMATION**

a.  Full name of applicant:  *BYRD, GIBBS & MARTIN, PLLC*

b.  Principal business premise address:  *427 E. FORTIFICATION*    *HINDS*
*(Street)*                                                    *(County)*

*JACKSON*          *MS*          *39202*
*(City)*        *(State)*        *(Zip)*

c.  Please list any secondary locations on a separate sheet and include number of lawyers at each location.

**COMPLETE THE INSURED SUPPLEMENT**

d.  (i)   Number of attorneys        *8*

(ii)  Number of Paralegals or law clerks    *6*

(iii) Number of clerical or support staff    *6*

(iv) Other-please describe
*Receptionist*        *3*

e.  Specify if: [ *✓* ] Partnership    [ ] Corporation    Year established:  *2004*

---

**2.    BUSINESS OPERATIONS**

a.  List on separate attachments the names of all predecessor firms whose assets and liabilities the Firm assumed during the past 10 years, include the name(s) of the firm(s), the year established, the number of lawyers, and the location.

b.  Does the firm share or lease space with any other firm or entity?...........................................................[ ] Yes [ *✓* ] No
If so, please advise of the entity' name and the specific circumstances on a separate attachment.

c.  Please advise of any foreign affiliated or associated firms and provide a detailed narrative of the name of the relationship on a separate attachment.

d.  Provide corporate brochure(s) and/or firm resume.

e.  (i)   Does any member of the Firm while rendering legal services also provide investment counselor services or provide tax opinions on tax shelters?...............................................................................[ ] Yes [ *✓* ] No
If yes, please describe the nature of the services provided and the types of clients to which such services are provided on separate attachment.

(ii)  Does any member of the firm on behalf of its clients perform legal services involving the formation or sale of syndications or limited partnerships?..................................................[ ] Yes [ *✓* ] No
If yes, on separate attachment, describe services performed and details, including number of formed during the past two years, total dollar amount of each and the nature of the investment.

**RECEIVED**

**FEB 15 2005**

**GILSBAR, INC.**
**PROFESSIONAL LIABILITY DEPT**

SM 4115-01  1/02                        Page 1 of 8

f.  Indicate the approximate percentage of gross billable dollars from practice devoted to:

| | | |
|---|---|---|
| Admiralty/Maritime ____% | Corporate (general) ____% | Real Estate |
| Anti-Trust/Trade Reg.____% | Corp. Mergers/Acquisitions ____% | Closings ____% |
| Banking ____% | Criminal ____% | Escrow/Title ____% |
| Bankruptcy ____% | Domestic Relations _3_% | Syndication/Development ____% |
| BI/PI Defendants ____% | Entertainment ____% | Securities Law*: |
| BI/PI Plaintiffs: ~~25%~~ | Estate/Probate/Trust ____% | Federal SEC ____% |
| Anticipated fees per case less than $25,000 _46_% | International Law ____% | State ____% |
| | Labor ____% | Private Placements ____% |
| Anticipated fees per case greater than or equal to | Litigation: | Bonds ____% |
| $25,000 _50_% | Plaintiff ____% | Taxation |
| Collection/ | Defense ____% | Preparation ____% |
| Repossession ____% | Municipal ____% | Opinions ____% |
| Communications ____% | Oil and Gas ____% | Other** _1_% |
| Copyright/Patent/TM____% | Public Utilities ____% | _WoRK COMP_ ____% |

TOTAL INCOME:    100%

\* Complete Securities Supplement.
\*\* Over 5% Specify.

g.  Are any major changes foreseen in the percentage shown in question (f) for the current fiscal year? ........[  ] Yes [X] No
    If yes, please provide narrative details on a separate attachment.

h.  Specify the firm's total gross revenues:
    Last fiscal year:  From _1/01/04_ to _12/31/04_ Gross Revenues  $ _3 MIL_
    Estimate current fiscal year:  From _1/01/05_ to _12/31/05_ Gross Revenues  $ _4 MIL_

i.  Is any lawyer listed in the Insured Supplement serving as a director, officer or partner of or
    exercising any fiduciary control over any entity other than the firm?......................................................[  ] Yes [√] No
    If yes, complete the Outside Interests Supplement

        REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

j.  Other than those positions referenced in question (i), does the firm or any lawyer or employee of
    the firm ever invest in the business of a client? ................................................................................[  ] Yes [√] No
    If yes, please provide on separate attachment full details of such relationship.

        REFER TO POLICY EXCLUSIONS REGARDING THESE ACTIVITIES

k.  Except as listed in question i and j, does the firm or any of its members engage in any occupation,
    business or profession other than the practice of law?.........................................................................[  ] Yes [√] No
    If yes, please provide narrative details on a separate attachment.

l.  (i)  Are custodial accounts (i.e., money, securities and other property held on behalf of clients)
         audited by an independent, outside auditor? ................................................................................[  ] Yes [√] No

    (ii)  Are two signatures required for all withdrawals of funds from custodial accounts? ............................[  ] Yes [√] No

m.  With respect to the total of all custodial accounts other than retainer fees, what is the average dollar amount and the
    maximum dollar amount held or maintained on behalf of the firm's clients?

    Average: $_____    Maximum: $_____

n.  Does the firm maintain a fidelity bond covering all employees?.........................................................[  ] Yes [√] No

o.  (i)  Please describe by separate attachment the firm's procedures for the acceptance of new
         business including conflict of interest checks and who has the authority to accept new business.

    (ii)  Does the firm make use of engagement letters with its new clients?......RECEIVED..........[√] Yes [  ] No

                        FEB 15 2005

                GILSBAR, INC.
            PROFESSIONAL LIABILITY

3. **HISTORY**

a. Over the past five years, has the Firm opened or closed any branch office or had a single loss of 25% or more of the lawyers of the Firm? .................................................................................[ ] Yes [ ] No
   If yes, please provide details by separate attachment.

b. (i) Has the firm or any predecessor firm or any lawyer listed in the Insured Supplement ever had any insurance company or Lloyd's decline, cancel, refuse to renew or accept only on special terms any professional liability insurance? ................................................................[ ] Yes [ ] No
      If yes, please explain: *Yes, Claims History*

   (ii) Has any lawyer listed in the Insured Supplement ever been the subject of a reprimand or disciplinary action or refused admission to the Bar? .....................................................[ ] Yes [ ] No
      If yes, please explain on a separate attachment.

   (iii) During the past seven years, has any professional liability claim or suit been made against any lawyer listed in the Insured Supplement or against the firm or any predecessor firm? ......................[ ] Yes [ ] No
      If yes, a SUPPLEMENTAL CLAIM INFORMATION form must be completed for each claim.

   (iv) After inquiry, does the firm or any person proposed for this insurance have knowledge of any incident, circumstance, act, error, omission or personal injury which may give rise to a claim?........[ ] Yes [ ] No
      If yes, provide a complete description of each on a separate attachment. It is agreed that if there be knowledge of any such incident, circumstance, error, omission or personal injury, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.

c. Please provide a list by separate attachment of all clients that represent 5% or more of the firm's total billable dollars or contribute $1,000,000 or more to the firm's income annually.   *N/A*

d. List lawyers professional liability insurance carried for each of the past five years. IF NONE, STATE NONE.

| Inception From | Expiration To | Insurance Company | Policy No. | Limit of Liability | Deductible | Premium |
|---|---|---|---|---|---|---|
| 2/04 | 2/05 | EVANSTON | LA902937 | 2 MIL | 15,000 | 14,233 |
| 2/07 | 2/04 | Evanston | LA90237 | 2 MIL | 10,000 | 113,800 |
| 11/02 | 4/03 | ANLIR | NAP008995N | 10 MIL | 5,000 | 28,000 |
| | | | | | | |
| | | | | | | |

NOTICE TO APPLICANT: The coverage applied for is SOLELY AS STATED IN THE POLICY, which provides coverage on a "CLAIMS MADE" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD unless the extended reporting period option is exercised in accordance with the terms of the policy.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information or conceals, for the purpose of misleading, information concerning any fact thereto commits a fraudulent insurance act, which is subject to criminal and civil penalties.

WARRANTY: I warrant to the Insurer, that I understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Insurer evidence its acceptance of this application by issuance of a policy. I authorize the release of claim information from any prior insurer to Shand Morahan & Company, Inc., **Ten Parkway North, Deerfield, Illinois 60015.**

*Isaac K. Byrd*
Name of Applicant

*PARTNER*
Title (Officer, partner, etc.)

Signature of Applicant

*FEB 11, 2005*
Date

SIGNING this application does not bind the Applicant or the Insurer or the Underwriting Manager to complete the insurance, but one copy of this application will be attached to the policy, if issued.

RECEIVED
FEB 15 2005
GILSBAR, INC.
PROFESSIONAL LIABILITY DEPT

SM 4115-01 1/02          Page 3 of 8

**INSURED SUPPLEMENT**

**APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE**

Indicate the names of all lawyers who are presently officers, partners, employed lawyers, of counsels or retired partners of the Firm and complete the requested information for each lawyer. **Please note that coverage responds only for acts performed on behalf of the firm.**

| Name of Lawyers | Designation O - Officer P - Partner E - Employed Lawyers OC - Of Counsel RP - Retired Partner | Member of Management Committee or Governing Body (Yes/No) | Year Admitted to Bar | Years of Full-Time Practice | Specialty, if any | Member in Good Standing of the Following State Bar(s) |
|---|---|---|---|---|---|---|
| Isaac K Byrd | P | Y | 76 | 28 | | MS, IL |
| Katrina Gibbs | P | Y | 93 | 11 | | MS |
| Precious Martin | P | Y | 97 | 7 | | MS |
| Suzanne Keys | O E | N | 77 | 27 | | MS |
| Ottowa Carter | E | N | 91 | 13 | | MS |
| Dawn Stough | E | N | 2000 | 4 | | MS |
| Tomeka Anderson | E | N | 2004 | 6 month | | MS |
| Pheadra Robinson | E | N | 1998 | 6 | | MS |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

I/We understand information submitted herein becomes a part of my/our professional liability application and is subject to the same representations and conditions.

Isaac K. Byrd
Name of Applicant*

Partner
Title

Signature of Applicant

February 11, 2005
Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

RECEIVED
FEB 15 2005
GILSBAR, INC.
PROFESSIONAL LIABILITY DEPT.

N/A

## OUTSIDE INTERESTS SUPPLEMENT
### APPLICATION FOR LAWYER'S PROFESSIONAL LIABILITY INSURANCE

FIRM: _Byrd, Gibbs & Martin, PLLC_

| Name of Lawyer | Name of Business | Position Held | Nature of Business | % of Equity Interest Individual | Firm & All Lawyers and Their Spouses and Immediate Family Members Combined | Client of Applicant (Yes/No) | D&O Insurance (Yes/No) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

_Isaac K. Byrd_
Name of Applicant*

_[signature]_
Signature of Applicant*

_PARTNER_
Title

_Feb 11, 2005_
Date

*MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BODY.

RECEIVED
FEB 15 2005
GILSBAR, INC.
PROFESSIONAL LIABILITY DEPT.



**SHAND MORAHAN**
**MARKEL· & COMPANY, INC.**
Ten Parkway North, Deerfield, IL 60015
(847) 572-6000  Fax (847) 572-6137
Underwriting Manager
A Markel Company

○ DEERFIELD INSURANCE COMPANY
○ EVANSTON INSURANCE COMPANY
○ ESSEX INSURANCE COMPANY
○ MARKEL AMERICAN INSURANCE COMPANY
○ MARKEL INSURANCE COMPANY

## BI PLAINTIFF FIRMS
## PERTINENT INFORMATION NEEDED

1.  Use of engagement/retention letter - send sample.

2.  Procedure used if firm declines services to client. Do they advise of statute? *Client written letter explaining reason for non-representation and advising of statute of case*

3.  Percentage of settlement firm takes as fees. *33⅓ Standard    40% (lawsuit-trial)*

4.  Types of cases - i.e., medical malpractice, asbestos, personal injury, wrongful death. *Medical malpractice, personal injury, wrongful death, some consumer fraud*

5.  Docket - request narrative describing controls.
    a)  New File - How does initial answer date get on system? By whom? *Cases are opened by a designated person in the office. All info logged into computer; legal asst and attorney tickle calendars + meet monthly*
    b)  What control (or who) checks to see if suit is filed? *To discuss. Weekly meetings.*

6.  Does the firm advertise? [ ✓Yes ] [ ] No. If so, in what medium? *Some newspaper ad, billboard, flyer to clients*

7.  Does the firm take referral cases in state, out of state? [ ✓Yes ] [ ] No. If so, approximately how many per year? *This number has decreased; approx 100 - 150*

8.  Does the firm refer cases to other firms? [ ✓Yes ] [ ] No. Approximately how many per year? *5-10*

I/We understand that the information submitted herein becomes part of my/our professional liability application and is subject to the same representations and conditions.

*Isaac K. Byrd Jr*
Name of Applicant

*PARTNER*
Title (Officer, partner, etc.)

Signature of Applicant*

*Feb 11, 2005*
Date

**RECEIVED**
FEB 15 2005
MARKEL INC.
PROFESSIONAL LIABILITY DEPT

**MUST BE SIGNED BY A MEMBER OF THE FIRM'S MANAGEMENT COMMITTEE OR GOVERNING BOARD**
SM6268  3/02

**MASS TORT/ CLASS ACTION SUPPLEMENTAL APPLICATION**

Please answer all questions or indicate "Not Applicable". If additional space is required for any answer, please use a separate sheet. At your option, you may attach a description of your office's mass tort / class action practice.

Firm Name Byrd, Gibbs & Martin, PLLC

1. What types of mass tort or class action cases do you handle (details regarding issues, types of products, etc.)? Use extra page if needed to describe fully. — Asbestos, insurance fraud, Auto fraud, finance, Female Hormone, Propulsid

2. How many mass tort or class action cases have you handled in the past 5 years? Approx 7500

   For these cases are you the "lead" attorney? (Yes)　　No

   The "local" attorney? (Yes)　　No

   The referring attorney? Yes　　No

   If cases are only referred to other firms, are these other firms in other jurisdictions? Yes　No/NA

   If so, where?

   Do you retain a fee for such referrals? Yes　No　N/A

   Do you continue to work on the case after referral? Yes　No　N/A

   If you are not the solo attorney, do you send your clients a letter outlining the specific scope of your representation? (i.e., advising them which tasks you are or are NOT performing, etc) (Yes)　No

3. How many clients do you typically represent for each case? Averge 400-600

4. What is the dollar value of each (potential damages)? Uncertain - avg. $250.00 - $25,000

5. Do you represent clients in other jurisdictions?
   If so, where? ILLINOIS

   What types of mass tort or class action cases are handled? NONE

RECEIVED
FEB 15 2005

**NOTICE TO APPLICANTS AND DECLARATION**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the Company. Penalties may include imprisonment, fines and denial of insurance benefits. I/We hereby declare that the above statements and particulars are true and that I/We have not suppressed or misstated any material facts and I/we agree that this application shall be the basis of the contract with the Company.

It is understood and agreed that the completion of this application does not bind the Company to issue, nor the applicant to purchase this insurance. I/We acknowledge that any material misrepresentation or commission shall void the contract

--------------------------------------------                                    _Feb. 11, 2005_
Signature and Title of Applicant                                                        Date

RECEIVED

# BYRD, GIBBS & MARTIN, PLLC

Attorneys at Law
427 EAST FORTIFICATION STREET
JACKSON, MISSISSIPPI
Corner of Congress & Fortification
(601) 354-1210
Watts 1-800-748-8617   Fax (601) 354-1254

ISAAC K. BYRD, JR.*
KATRINA M. GIBBS
PRECIOUS T. MARTIN, SR.

*Certified National Board of Trial Advocacy
*Licensed in Illinois

Mailing Address:
Post Office Box 19
Jackson, MS 39205

INDIANOLA OFFICE:
114 Court Street
Indianola, MS 38751
(866) 887-7888

September 27, 2004

Gilsbar Insurance
P.O. Box 998
Covington, LA 70434

Re: Professional Liablity Insurance
Policy # LA802937

Dear Sir :

Please remove the following attorneys from the above Professional Liabilty Insurance.

**Attorneys**                          **Termination Date**

Otisa Strickland                       February 13,2004
Antwayn Patrick                        May 21,2004
Adrienne Wooten                        September 10,2004

Thank you for your assistance . I may be reached at (601) 354-1210.

BYRD, GIBBS, & MARTIN, PLLC

Michelle Y. Byrd
Firm Administrator

RECEIVED
OCT 0 4 2004
GILSBAR, INC.
PROFESSIONAL LIABILITY DEPT

*"25 YEARS OF COMMITMENT AND DEDICATION TO JUSTICE"*

LT

# BYRD, GIBBS & MARTIN, PLLC

Attorneys at Law
427 EAST FORTIFICATION STREET
JACKSON, MISSISSIPPI
Corner of Congress & Fortification
(601) 354-1210
Watts 1-800-748-8617  Fax (601) 354-1254

ISAAC K. BYRD, JR.*
KATRINA M. GIBBS
PRECIOUS T. MARTIN, SR.

*Certified National Board of Trial Advocacy
*Licensed in Illinois

Mailing Address:
Post Office Box 19
Jackson, MS 39205

INDIANOLA OFFICE:
114 Court Street
Indianola, MS 38751
(866) 887-7888

November 2, 2004

**VIA FAX # (888)647-7445**
Gilsbar Insurance
P.O. Box 998
Covington, LA 70434

Re: Professional Liablity Insurance
Policy # LA802937

Dear Ms. Lynn Trainor:

Please add the following attorneys to the Professional Liabilty Insurance.

| Attorneys | SSN# |
| --- | --- |
| Tomika Anderson | 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 |
| Crystal Martin | 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 |

If you have any questions please call (601) 354-1210.

BYRD, GIBBS, & MARTIN, PLLC

Sincerely,

Isaac K. Byrd, Jr.
Attorney

"25 YEARS OF COMMITMENT AND DEDICATION TO JUSTICE"



# BYRD, GIBBS & MARTIN, PLLC

Attorneys at Law
427 EAST FORTIFICATION STREET
JACKSON, MISSISSIPPI
Corner of Congress & Fortification
(601) 354-1210
Watts 1-800-748-8617   Fax (601) 354-1254

ISAAC K. BYRD, JR.*
KATRINA M. GIBBS
PRECIOUS T. MARTIN, SR.

Mailing Address:
Post Office Box 19
Jackson, MS 39205

*Licensed in Illinois

INDIANOLA OFFICE:
114 Court Street
Indianola, MS 38751
(866) 887-7888

Page-2

Type of Coverage: Lawyers Professional Liability
File Number:  BYRASSO/MSBA9841-10

Question 3:

3b:
There are no changes from last year.

3b (iv)
No, there are no pending or known circumstances which may lead to a claim.

3b (iii)
The two claims we have on file are Billy Bulter-- This case has been dismissed;
and Howard and Duprell (we have a filed a motion to dismiss based on lack of jurisdiction)

